DECISION
Petitioner, Lucy Lyons, has requested of this Court leave to file an untimely appeal of a probate decree based on mistake, accident, unforeseen cause or excusable neglect.
Mrs. Lyons is the sole surviving sibling of the decedent, Jean Sarkissian, who passed away on January 13, 1999. One week later, Mrs. Lyons signed a waiver assenting to probate, which had been presented to her by Attorney Carol Najarian. The will was admitted to probate on February 9, 1999 leaving March 1, 1999 (there was no February 29, in 1999) as the expiration date for the filing of an appeal.
Mrs. Lyons now claims that she was mentally and physically exhausted as well as depressed when she signed the waiver and did not fully understand its meaning and importance.
Mrs. Lyons presently the age of 70 years, is a resident of Los Angeles, California. During the last 15 years (preceding Mr. Sarkissian's final illness) petitioner had not seen much of her brother who resided one half of the year in France and the other half in Rhode Island. Mrs. Lyons has one daughter, Deborah Lyons Fernandes, who received a 3.5% interest in her uncle's estate.
On December 30, 1998, Mrs. Lyons received information that her brother was very ill and in Rhode Island Hospital. She literally flew to his bedside, departing on a 6:50 am. flight from California on December 31st. It is clear that she loved her brother dearly and for all intents and purposes, maintained a vigil at his side until he passed away on January 13, 1999. Mrs. Lyons was understandably very emotional and tearful during this time. Although she was coughing and starting to feel weak, she ignored her condition and focused on her brother. Approximately eight days after his demise she visited the Rhode Island Hospital emergency room reporting cold symptoms. The medical records (Exhibit 8) indicate that Mrs. Lyons' chief complaint was a "cough." According to those records she had no trouble breathing and no fever. Importantly, the neurological psychological portion of the examination describe Mrs. Lyons as oriented, of normal mood and affect, and without any sensory deficit. She was diagnosed with bronchitis and discharged to follow up with her own physician if necessary.
When Mrs. Lyons returned to California she was treated by Dr. Robert Waldman until the middle of March of 1999. In his affidavit (Exhibit 7) Dr. Waldman states that Mrs. Lyons had severe bronchitis with symptoms including constant choking and coughing and sleep disturbance. He also mentions that she had difficulty speaking during her illness. However, the affidavit never suggests that Mrs. Lyons' mental state was in any way abnormal.
Several days after the service for Mr. Sarkissian, a family meeting was convened and attended by Attorney Carol Najarian. Mrs. Lyons testified that when she "glanced" at the will and saw the order of beneficiaries, she could not believe it was her brother's will. Petitioner was shocked to find her name "last on the list," after her cousins, because her brother had told her he would take care of her and she would never have to worry about money. Moreover, she received an amount which was equal to what the cousins had inherited, $175,000 of a one million dollar estate. This disposition seemed quite impossible for Mrs. Lyons to accept and she believed that it signified that "someone had something to do with the will." She was particularly suspect of her aunt, Ester Dadekian because Esther "knew the terms of the will." However, there is not one particle of evidence to support any conclusion, or to even raise a suspicion, that anyone attempted to exert any influence over Mr. Sarkissian.
The terms of the May 11, 1997 will were struck while Mr. Sarkissian was a patient in Rhode Island Hospital. The discussion between Mr. Sarkissian and Attorney Carol Najarian was conducted in total privacy. Mr Sarkissian had insisted on the Saturday night before Mother's Day, 1997, that Harlan Hersey telephone Mrs. Najarian to come to the hospital. Mr. Sarkissian had feared that he might not survive the operation he was to undergo that Monday. Attorney Najarian described Mr. Sarkissian as "very alert" and "well aware of his assets." Not much discussion occurred regarding Mrs. Lyons but for the statement that the decedent wished to treat his sister and cousins equally. Whenever the latter were mentioned, a smile would cross Mr. Sarkissian's face.
In any event, the medical procedure on that Monday was successful and Mr. Sarkission was released from the hospital. After his discharge, further discussions ensued concerning the disposition of Mr. Sarkissian's assets and creation of a trust. While he was recuperating, he requested that Attorney Najarian set up a trust for the benefit of the children of Mrs. Lyons' cousins, Nancy Hersey, Linda Daglieri, and Deborah Lanni. To that end, Attorney Najarian engaged the services of another attorney who specialized in the area. Although he actually prepared the documents, Ms. Najarian thoroughly reviewed each provision with the decedent before the instruments were executed. The latter occurred on November 3, 1997, with Attorney Najarian being one of three witnesses attesting to Mr. Sarkissian's testamentary capacity. It must be noted that although certain meetings with reference to the instruments took place in the home of Esther Dadekian, no family members were present and a confidential relationship between Mr. Sarkissian and his attorney was maintained.
The Court also heard the testimony of Harlan Hersey, the executor of the will. Mr. Hersey is the husband of cousin Nancy with whom he has five children. Mr. Hersey met Mr. Sarkissian in 1971 when Mr. Hersey started dating the then Nancy Dadekian. Mr. Sarkissian was very fond of the Hersey children, visiting them every Saturday. He enjoyed a similarly close relationship with the children of Linda and Deborah (Nancy's sisters). In 1997 and 1998, when Mr. Sarkissian was ill and needed home care, he stayed at the Hersey/Dadekian residence.
Nancy Hersey and Linda Daglieri beamed wilt love for the decedent and were tearful to recall his final days during their testimony. They too had enjoyed a wonderful and close relationship with the decedent. Their children nicknamed him "Uncle Jeano."
Clearly, neither of these women ever talked to Mr. Sarkission regarding his estate. As Mrs. Hersey testified: "There was no speculation regarding his estate . . . we never thought of him dying . . . he wasn't supposed to!"
In order for the petitioner to prevail on the instant claim, she must present evidence of mistake, accident, unforeseen cause, or excusable neglect such that justice requires an allowance of the appeal. The Court regarded Mrs. Lyons to be very intelligent, sophisticated, and extremely well-mannered. The Court is also convinced that her love for her late brother was genuine and boundless. She mast certainly have believed his statement that after he died she would have no financial worries and no need to be employed. Understandably, Mrs. Lyons was most disheartened and disappointed when the terms of the will were revealed. Indeed, she expressed the feelings aloud to family members and Attorney Najarian. Very simply, Mr. Sarkissian failed to bequeath to his sister what she was led to expect she would receive.
Any competent testator has the freedom to change his mind or to insert provisions in a will which do not conform to his oral representations. Here, Mr. Sarkissian created an expectation in his sister's mind which he did not live up to. However, the executed instrument must control. There is no evidence whatsoever that Mr. Sarkissian's testamentary capacity was impaired or that he was the victim of undue influence. The evidence is abundant that Mrs. Lyons, too, was fully competent when she signed the waiver. While it is true that she suffered from bronchitis during the period in question, she did not ingest any mind altering medications. The Court is convinced that a woman of her alertness and intelligence was fully aware of the waiver's import. Her disappointment with the disposition of assets, no matter how profound, can not overshadow the facts. None of the cases petitioner urges this Court to apply are based on a factual situation such as the instant case.
The credible evidence demonstrates that the waiver was signed in a knowing, intelligent and voluntary fashion. Furthermore, the evidence reveals that Mr. Sarkissian was fully competent at the time he made his testamentary decisions.
Therefore, the Court is compelled to deny Lucy Lyons' petition.